**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CALVERT L. POTTER, *et al.*,      :
                                   :
          Plaintiffs,             :
                                   :
     v.                            :  Civil Action No. 01-1189 (JR)
                                   :
DISTRICT OF COLUMBIA,             :
                                   :
          Defendant.              :

<u>MEMORANDUM</u>

Calvert Potter, Tarick Ali, and Hassan Umrani are District of Columbia firefighters.  They are Muslims who wear beards as a matter of religious observance.  Their beards have been controversial.  In May 2001, they sued to establish the proposition that a grooming policy of the fire department (now the Fire and Emergency Medical Service, or FEMS, hereinafter the "Department" or the "District) violated their rights under the Religious Freedom Restoration Act (RFRA) and the First Amendment. On June 22, 2001, I granted a preliminary injunction in their favor, directing the Department not to subject them to any portions of the grooming policy that would require them to violate their religious beliefs, or to sanction them for failing to comply with the policy on religious grounds.

The rather vague prohibitions of that preliminary injunction (issued in the language proposed by the plaintiffs) have remained in effect for more than four years.  After an

initial flurry of legal activity,[1] the case seemed to put itself
to sleep.

### Procedural History

In September 2002, I ordered the parties to report on
the status of their litigation. A month later, I was advised (by
a joint report of the parties) that the Department was in the
process of drafting a new policy, that it would take at least 90
days to do so, and that the case should be in abeyance until mid-
January 2003.[2]  When I heard nothing after more than six months
had passed, I dismissed the case for want of prosecution in May
2003, reinstating it only after the parties assured me that they
were working on the new policy.  Status reports (essentially,
that nothing much was happening) were then filed in August 2003,
October 2003, December 2003, February 2004, and April 2004.  In
May 2004, I finally scheduled a status conference, essentially to
force the District to report its progress on drafting a new
policy.  The District did not show up.  I then ordered that the

---

[1] In late August 2001, the defendant moved for partial
summary judgment and for declaratory judgment, calling into
question the constitutionality of applying RFRA to the District
of Columbia.  In December 2001, the United States Government
intervened to oppose the District's position on RFRA.  In
February 2002 the District withdrew its motion (and the United
States Government has not been heard from since).  In April 2002,
I heard and denied a motion for an order to show cause why the
District should not be held in contempt for removing plaintiff
Hassan Umrani from his HazMat unit.

[2] Note that more than a year had now passed since the
terrorist attacks of September 11, 2001.

District's putative new policy be submitted to plaintiffs and to the Court by June 15, 2004.  The District did not file a new policy.  Instead, it filed a suggestion of mootness, attaching a copy of a fire department special order issued three years previously (and four days after the preliminary injunction) providing that persons objecting on a religious basis to specific provisions of the Department's grooming regulations would be exempt from those provisions.

Another six months passed (without any response from plaintiffs to the suggestion of mootness).  I asked the parties on December 21, 2004, to report whether there was "anything left to litigate."  The District responded in the negative, noting that it "intended to adopt a safety based policy that will mandate that all personnel required to wear face masks to perform their duties pass a 'face-fit' test," but asserting that its new safety policy had nothing to do with the grooming policy that had been the basis of the complaint.  Plaintiffs' answer was quite different.  They had learned, they said, that the new policy "continues to prohibit facial hair even if a firefighter with facial hair can obtain a perfect fit on his breathing mask," a prohibition that, in their submission, would violate the preliminary injunction.  That response prompted my order, issued on February 11, 2005, requiring that the District file "a plain statement of what its official policy is with respect to facial hair and a 'face-fit' test for face masks."  On February 28,

2005, the District finally did, stating its intent "to require that all employees required to wear protective masks comply with the 'face-fit' requirements of 29 CFR 1910.134."

That statement brought the case quickly to a boil again.  Plaintiffs moved for clarification of the preliminary injunction and for a permanent injunction.  The District moved for judgment as a matter of law.  On June 7, 2005, the Fire and Emergency Medical Service (FEMS) issued its policy formally as Special Order 20, Series 2005, Pl. Pre-hearing Mem. Ex. 5-5. Plaintiffs immediately filed an emergency motion to hold the fire chief in contempt and to preserve the status quo.

###### Special Order 20

Special Order 20 prohibits firefighters who must wear tight-fitting face pieces from having facial hair "that comes between the sealing surface of the facepiece and the face or that interferes with the valve function." Id.  Those who do not comply with the order are to be placed in administrative duty status, then penalized with a 12 hour suspension, then a 24 hour suspension, and finally, "recommended for termination for [sic] the fourth day for noncompliance." Id.  In consideration of this litigation, the Department also notified firefighters that they may request religion-based exemptions from Special Order 20.  A firefighter whose request for exemption is granted will not be disciplined for failing to comply with Special Order 20, but will be "assigned to administrative duties until the legal issues are

- 4 -

resolved."  Pl. Emergency Mot. to Show Cause, Second Sneed Decl., Ex. B.

On June 13, 2005 I ruled ad interim that the Department could not place the plaintiffs on administrative duty status and that the preliminary injunction would remain in place until a merits hearing could be held on the plaintiffs' RFRA claim.  At the close of that hearing, which took place on August 1, 2005, I extended the injunction for ten "real days."  Tr. at 161.

        The plaintiffs

Plaintiff Calvert Potter has worked for the D.C. Fire Department since 1992.  He became a practicing Sunni Muslim in 1996 and grew a beard that reached its natural length and density some time in 1997.  Calvert Decl. ¶ 3.  He is a member of the HazMat unit, and he took and passed a computerized face fit test on July 19, 2002.  Id. at ¶ 13, 17, Ex. A.

Plaintiff Hassan Umrani has worked for the D.C. Fire Department since 1989, at which time he was already practicing Islam and wearing a beard as an expression of his religious faith.  Umrani Decl. ¶¶ 2-4.  He trimmed his beard in April 2001 to avoid termination under the Department's grooming code regulation "even though it [was] not in compliance with my religious beliefs."  Id. at ¶ 4.  He allowed his beard to grow again after the preliminary injunction was issued in 2001.  Id. He failed the face test in 2002 and was transferred out of the HazMat unit.  After being equipped with a different face piece

- 5 -

that provided a better fit, however, he again appeared for the computerized face-fit test, passed, and was reassigned to the HazMat unit.[3]  <u>Id.</u> at ¶ 15.

Plaintiff Tarick Ali has worked for the D.C. Fire Department since 1991 and has been certified as a HazMat technician since 2005.  Ali Decl. ¶ 2.  He has practiced Islam and worn a beard as an expression of his religious faith throughout his tenure as a D.C. firefighter.  <u>Id.</u> at ¶¶ 3-4.  He stopped trimming his beard in 1989, and it reached its current length and consistency in 1998.  <u>Id.</u> at ¶ 4.  He has not been permitted to take a computerized face-fit test.

The three plaintiffs have fought hundreds of fires. They have never caused injuries to themselves, other firefighters, or members of the public on account of their beards.  The parties have stipulated that their belief in their religious obligation to wear beards is sincere.  Tr. at 6.

<u>The masks</u>

It is undisputed that firefighters who wear beards can safely operated the positive pressure self contained breathing apparatus (SCBA) that firefighters use in situations considered to be immediately dangerous to life and health (IDLH), such as

---

[3] William Fitzgerald, deputy fire chief in charge of risk management, testified that Umrani did not in fact pass the face-fit test.  A score of 500 is required to pass the test.  The person who administered the test to Umrani "changed the number of the fit factor, and when he changed the fit factor number, of course it was down below 500."  Tr. at 78.

oxygen-deficient atmospheres.  It is undisputed that the SCBA is
the safest of all the available respiratory protection options,
because 1) when using an SCBA a firefighter breathes from a
bottle filled with air and does not inhale contaminants from his
surroundings; and 2) any break in the seal between a
firefighter's face and his SCBA mask will cause air from the tank
to blow out, due to positive pressure, preventing air from the
surrounding environment from entering the mask.

        The disagreement in this case concerns the safe
operation of _negative_ pressure masks by firefighters.  The
Department requires D.C. firefighters to be able safely to wear
the filter respirators issued to them in "Go-Bags" after the 9/11
terrorist attacks.  The Go-Bag filter attaches to the same face-
piece a firefighter uses with an SCBA (instead of a hose from an
air bottle) and creates a negative pressure air purified
respirator (APR).  The APR enables a firefighter to breathe
filtered air from his surrounding environment and does not use
air from a tank.  Its use is therefore not limited to the time it
takes to exhaust an air bottle,[4] and the firefighter using an APR
does not have to carry the extra weight of an air bottle.  Tr. at
112-13.  A break in the seal, however, allows air from the
surrounding environment to enter the mask.

---

        [4] SCBA tanks only last 30 minutes to an hour, depending on a
firefighter's level of activity, lung capacity, weight, size, as
well as other factors.  See Tr. 91-92.  An APR filter, on the
other hand, lasts considerably longer.

**Analysis**

RFRA was passed "to restore the compelling interest test as set forth in <u>Sherbert v. Verner</u>, 374 U.S. 398 (1963) and <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened."  42 U.S.C. § 2000bb(b)(1).  According to the RFRA:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
> (b) Exception
> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person–
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the last restrictive means of furthering that compelling governmental interest.

<u>Id.</u> at § 2000bb-1(1)(a)-(b).  The plaintiffs have the initial burden under RFRA to demonstrate that the policy in question substantially burdens the free exercise of their religion.  <u>See</u> <u>Branch Ministries v. Rossotti</u>, 211 F.3d 137, 142 (D.C. Cir. 2000).  Because the parties have stipulated to the sincerity of plaintiffs' belief that their religion requires them to grow beards, <u>see</u> Tr. at 6, and because Special Order 20 decrees that any firefighter who must wear a tight-fitting face-mask and who does not comply with the no-facial hair policy will be suspended and then terminated, it appears to be undisputed that plaintiffs have sustained their burden on this point.

The burden now shifts to the government to demonstrate 1) that Special Order 20 furthers a compelling interest, and 2) that it is the least restrictive means of furthering that interest.  42 U.S.C. § 2000bb-1(1)(b); see id. at § 2000bb-2(3) ("the term 'demonstrates' means meets the burden of going forward with the evidence and of persuasion"); Kikumura v. Hurley, 242 F.3d 950, 961-62 (D.C. Cir. 2001).

The Department asserts, and I find, that Special Order 20 furthers the interest of preserving the respiratory health of firefighters, so that they can help to protect other fellow firefighters and the public they serve, and that this interest is compelling.[5]

What the Department has yet to establish is that Special Order 20 embodies the least restrictive means of furthering its compelling interest.

Special Order 20 requires that firefighters comply with the face-fit requirements of 29 C.F.R. § 1910.134, which is the OSHA regulation for "respiratory protection."  That regulation provides, at § 1910.134(g)(1)(I), that

> The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have:

---

[5] This finding gives the District the benefit of the doubt as to the actual need for its policy, which appears to be based entirely on concern about future events that are very unlikely to occur.  There is no record evidence that a firefighter with a beard has sustained injuries due to face mask leaks when wearing negative pressure masks, or run out of bottled air more quickly than firefighters who do not have beards.

> (A) Facial hair that comes between the sealing surface
> of the facepiece and the face or that interferes with
> valve function.

The Department's position is that the OSHA standard, together

with the mandatory fit-testing procedures that accompany it, 29

C.F.R. § 1910.34 App A, are inflexible; that face-fit testing

must be done on clean-shaven faces; that firefighters must report

to work every day clean-shaven; and that the contractor hired to

administer face-fit testing for the Department has indeed

declined to perform the test except in strict accordance with the

OSHA procedures.

Plaintiffs argue that OSHA standards do not apply to

District of Columbia and submit that, when it chooses to do so,

the District ignores them--but they have not proffered another,

more authoritative standard.  Plaintiffs urge that the OSHA

standard was intended to be flexible, citing OSHA's comment, 63

Fed. Reg. 1152, 1238 (Jan. 8, 1998), that "respiratory protection

alternatives, such as loose-fitting hoods or helmets, are

available to accommodate facial hair"--but they have not

successfully rebutted the Department's compelling testimony that

it must maintain interoperability with other responders from the

D.C. metropolitan area Council of Government, and that neither

those fire departments nor the equipment caches that have been

established since 9/11 have the PAPR's (or enough of them) or the

hooded PAPR's that plaintiffs say could be less restrictive

alternatives to the negative pressure APR's.

The record remains unclear, however, on the question of whether these three firefighters could actually operate safely with negative pressure APR's.  It is unclear because of the District's rigid refusal to allow the plaintiffs to test their proposition that they can satisfy the negative pressure requirements of the face-fit test.  That rigidity is not acceptable, in view of RFRA's command that "governments should not substantially burden religious exercise without compelling justification."

        Preliminary injunction standard

        While the Department has the burden of persuasion under RFRA, it is the plaintiffs who have the burden of establishing their entitlement to a preliminary injunction.  The standard is well established and has four parts, "(1) a substantial likelihood of success on the merits, (2) that [plaintiffs] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  MOVA Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  These factors are evaluated on a sliding scale, see CityFed. Fin. Corp. v. Office of Thrift Supervisions, 58 F.3d 738, 747 (D.C. Cir. 1995).

        Likelihood of success on the merits.  At this point, both sides' likelihood of success on the merits of the RFRA claim

must be rated "uncertain."  The less restrictive alternative
question boils down to a dispute about beard growth.  The
Department believes that the variability of beard length and
density from one day to the next makes face-fit tests of bearded
firefighters impractical, but nobody has tested that proposition
on people with fully mature, grown-out beards.  The plaintiffs
insist that they could pass the test if only it were administered
to them with their beards, but one of them has failed the test,
another's passing score was achieved improperly, and none of them
has proven their hypothesis that beard growth stops after a
while, so that they could post <u>repeatable</u> test results month
after month.

     <u>Irreparable injury to plaintiffs</u>.  Special Order 20
provides that the Department would recommend firefighters for
termination if they are unable to pass OSHA's face-fit test as
written (¶ 3), but it has undertaken to assign plaintiffs to
administrative duty until "legal issues are resolved."
Plaintiffs will suffer no irreparable injury, or their injury
will be slight enough that it is outweighed by another factor, if
they must be on administrative duty status during the time
required to test the competing hypotheses of the two sides as to
beard growth and repeatable face-fit tests.

     <u>Substantial injury to others.</u>  The question of whether
others would be injured if the requested injunction were to issue
is impossible to answer except with probabilities.  The

- 12 -

probability that any of these plaintiffs would be called upon to use his Go-Bag canister in the next, say, six months, seems vanishingly remote.  The disaster scenarios posited by the Department (nuclear fallout, chlorine gas, to name two) are IDLH situations in which the Go-Bag canisters would be of no use.  The only realistic scenario presented by the record is that one or more of the plaintiffs might be called upon to help decontaminate other responders in "white powder," or anthrax scare, situations. Nevertheless, as I have noted above, it is the Department's duty to assess risk.  A court has no competence, nor does RFRA give it the warrant, to second-guess that assessment.

Where lies the public interest?  The public interest favors both insuring the safety of firefighters and the public and obeying the command of Congress under the RFRA.  In the present state of the record, it is impossible to say on which side of the scale it rests.

## Conclusion

The factors of likelihood of success on the merits and the public interest are in equipoise.  Plaintiffs' success in sustaining their burden must accordingly be measured weighing the risk of disaster against the inconvenience and frustration to plaintiffs of sitting on the sidelines while the parties' competing hypotheses about beard growth are tested.  The law may not have a scale sensitive enough to be certain of that balance, but I believe that it favors the District.

The accompanying order grants plaintiffs' motion for clarification of the existing preliminary injunction, which remains in effect, but which (I) does not prohibit the District from requiring plaintiffs to pass an appropriate face-fit test if they are to be assigned to field operations, (ii) does prohibit the District from terminating the plaintiffs if they cannot pass an appropriate face-fit test, but permits the District to place them in administrative duty status pending further order of the Court, and (iii) requires the District to permit the plaintiffs a reasonable opportunity to demonstrate that they can pass an appropriate face-fit test. I cannot prescribe or decree the manner by which the District must provide that opportunity and leave the details initially to the parties, but I have in mind a series of face-fit tests, perhaps monthly for three or four months, that would either prove or disprove the contentions of the parties that beard growth and density is too variable for reliable, repeatable testing of bearded men.

* * * * * * *

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge


- 14 -