UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVERT L. POTTER<br>705 Summertime Drive<br>Odenton, Maryland 21113,<br><br>MONICA ALI, as personal representative<br>of the estate of TARICK A. ALI, deceased<br>5008 Suitland Road<br>Suitland, Maryland 20746,<br><br>ROBERT ANTHONY ELLERBE<br>52 Rhode Island Avenue, N.E.<br>Washington, D.C. 20002,<br><br>SHANNON M. LYONS<br>1147 4th Street, N.E.<br>Washington, D.C. 20002,<br><br>WILLIE C. GAFNEY<br>3330 Erie Street, S.E.<br>Washington, D.C. 20020, and<br><br>HASSAN A. UMRANI<br>1468 Sheridan Street, N.W.<br>Washington, D.C. 20011,<br><br>   Plaintiffs,<br><br> v.<br><br>DISTRICT OF COLUMBIA,<br><br>   Defendant. | No. 01-cv-1189 (JR) |

# AMENDED COMPLAINT

**(for injunctive relief and damages; violation of religious liberty)**

**Nature of the Case**

1. This is an action to compel the District of Columbia (the "District") and the District of Columbia Fire and Emergency Medical Services Department ("Fire

Department" or "Department") and its officials to abide by their obligation not to interfere with the religious practices of the Department's members. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb to 2000bb-4 ("RFRA"), prohibits the District from burdening sincerely-held religious beliefs unless that burden results from the only means of furthering a compelling interest of the District. The Plaintiff Firefighters all hold sincere religious convictions prohibiting them from shaving their beards, cutting their hair, or requiring them to wear religious head coverings. When the Plaintiffs filed their initial Complaint in 2001, all faced imminent punitive sanctions if they did not comply with the Department's newly-enforced "Grooming Policy" which requires members to shave their beards to 1/4-inch length and cut their hair to a length above the mid-point of their neck. In July of 2001, the Court entered a preliminary injunction in Plaintiffs' favor. Since that time, the Department has not enforced any rule or regulation prohibiting long hair or the wearing of religious head coverings. In 2005, however, the Department modified its grooming policy to prohibit facial hair entirely. Modern safety equipment makes it unnecessary to be clean-shaven in order to be safe. The Department therefore cannot prove that its no-beard rule is essential to safety. In the absence of such proof the Religious Freedom Restoration Act prohibits the Department from overriding Plaintiffs' sincere religious convictions. Injunctive relief is necessary to protect what prior to 2005 was the long-standing *status quo* and to prevent continuing and irreparable injury to Plaintiffs' religious rights.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because plaintiffs assert claims under federal law. Plaintiffs' cause of action is established by 42 U.S.C. § 1983.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

**Parties**

4. Plaintiff Calvert Potter has been a firefighter with the Department since 1992. He became a practicing Sunni Muslim in 1996, since which time he has not shaved his beard to follow Muslim teaching. Potter follows the example and teaching of the Prophet Mohammed to "grow the beard and trim the mustache." His beard extends approximately two (2) inches from his face and remains at this length naturally.

5. Plaintiff Robert A. Ellerbe has been a firefighter with the Department since 1991 when he left the United States Marine Corps after service in Operation Desert Storm. Ellerbe is a Rastafarian whose religious faith and practice requires him to grow his hair.

6. Plaintiff Willie C. Gafney became a firefighter with the D.C. Fire Department in 1991, the same year that he took a Nazarite vow, which prevents him from cutting his hair. Even though Gafney could not cut his hair because of his religious beliefs, he complied with the Department's Grooming Policy by pinning his hair so that it did not extend below the mid-point of his shirt collar as the Grooming Policy allows. Gafney left the Department at some point between the filing of this action and 2005.

7. Plaintiff Tarick A. Ali was a D.C. firefighter from 1991 until November 2006, when he passed away. The complaint as to causes of action arising before his death is being pursued on behalf of his estate. Ali began practicing as a Sunni Muslim in 1970 by following the five pillars of Islam. As a Sunni Muslim, he followed the example and teachings of the Prophet Mohammed to grow his beard, which he did not cut between at least 1989 and November 2006, and it remained naturally at a length of about one and one-half (1-1/2) inches from his face.

8. Plaintiff Shannon M. Lyons joined the Department as in 1992. He became a practicing Sunni Muslim in 2000, and has not cut his beard since that time as part of his religious practice and observance. Lyons left the Department at some point between the filing of this action and 2005

9. Plaintiff Hassan A. Umrani has been a firefighter since 1989, and has worn a beard for that entire time as a practicing Muslim. Umrani also practices his religion by wearing a Kufi on his head.

10. Defendant District of Columbia is a municipal corporation of which the District of Columbia Department of Fire and Emergency Medical Services is an agency.

**Facts**

11. For at least thirty years prior to 2005, the Department officially permitted its employees to wear 1/4-inch beards if they suffered from a medical condition known as *pseudofolliculitis barbae*, also known as "PFB" or "razor bumps." Informally, the Department allowed all employees to wear such beards for at least twenty years prior to 2005. During that time, hundreds of Department members wore beards, and took and passed official fit tests while wearing beards. During all that time, there was not a single incident in which a member's facial hair was responsible for a safety problem.

12. Subsequent to the decision of the District of Columbia Court of Appeals in *Kennedy v. District of Columbia*, 654 A.2d 847 (1994), all Department members were officially permitted to wear 1/4-inch beards. As a practical matter, the Department did not enforce the 1/4-inch limitation on the length of beards, and many members wore beards longer than 1/4 inch. Many Department members passed official fit tests while wearing beards longer than 1/4 inch. No member's facial hair was ever responsible for a safety problem.

13. While on a fireground, or in any other toxic atmosphere, firefighters protect themselves from respiratory injury by wearing a "self-contained breathing apparatus" (SCBA) consisting of a face mask connected to an air tank. The air tank provides a flow of air whenever pressure inside the facepiece falls below a pre-defined (positive) value. As a result of this positive pressure, any imperfections in the fit between a firefighter's face and mask will result in a leakage of clean air to the outside atmosphere, rather than a leakage of toxic material into the face mask.

14. The presence of facial hair might or might not cause an imperfect fit between a firefighter's face and face mask. Other variables, such as a thin face, prominent cheekbones, a long jaw or nose, or facial scars, might or might not also cause an imperfect fit between a firefighter's face and face mask.

15. Because of the positive-pressure feature of the SCBA, an imperfect fit does not directly endanger a firefighter's life or health or the safety of others.

16. A less perfect fit—whatever its cause—will result in a firefighter depleting his or her air supply somewhat faster than a more perfect fit. Many other individual variables, including body weight, physical fitness, respiratory efficiency, and physiological reaction to stress, will also affect the speed with which a firefighter depletes his or her air supply.

17. There is no reason to believe that the presence or absence of facial hair will have a greater effect on the speed with which a firefighter's air supply is used than the firefighter's body weight, physical fitness, respiratory efficiency, or physiological reaction to stress. Plaintiffs do not (or did not) deplete their air supply faster than their fellow firefighters.

18. Firefighters with facial hair present no greater risk to themselves or others, when fighting fires or when operating in any hazardous atmosphere, than clean-shaven firefighters.

19. In the spring of 2001, then-D.C. Fire Chief Ronnie Few announced strict enforcement of the Department's grooming policy, which prohibited (among other things) beards longer than 1/4 inch, hair longer than the top of the shirt collar (for men only), and head coverings (such as yarmulkes and kufis) that were not part of the official uniform. Plaintiffs filed suit under seeking protection of their religious beliefs under the Religious Freedom Restoration Act and the First Amendment to the United States Constitution.

20. On June 22, 2001, this Court entered a preliminary injunction prohibiting the Department from taking any action against Plaintiffs because of their beards, long hair or head coverings. With regard to beards, this Court's order rested on its understanding that the positive-pressure feature of the breathing apparatus provided protection for firefighters with facial hair. For the next four years, the Department honored that injunction.

21. In late 2001 or early 2002, after the Court issued its injunction, the Department's firefighters were provided with Go-bags. These Go-bags contain a filter that, when fitted to the face mask (by way of an adaptor), creates an air-purifying respirator ("APR") that provides protection against certain atmospheric hazards.

22. A face mask fitted with a Go-bag filter operates as negative-pressure APR. Because outside air is pulled through the filter by the user's intake of breath, outside air could leak into the face mask in the event of a poor fit.

23. For this and other reasons, the respirator formed by a face mask and Go-bag filter is not approved for use in a toxic atmosphere. Department personnel are not permitted to work in toxic atmospheres using their face masks and Go-bag filters.

24. When the Go-bags were distributed, Department personnel were advised that they were intended for use in civil disturbance situations, for protection against non-lethal hazards such as tear gas, pepper spray, and the like.

25. Department personnel are not required to, and do not, carry their face masks and Go-bags with them when they are off duty. They are kept at the station house with members' other equipment.

26. On May 25, 2005, then-Fire Chief Thompson issued Special Order 20, Series 2005. That order requires all members to be clean-shaven in the area where the sealing surface of their face masks meet their faces. Because the sealing surface of a face mask meets the face in the same area where a beard grows, the effect of Special Order 20 is that no member may wear a beard. Special Order 20 provides that disobedience will result in discharge.

27. On August 11, 2005, this Court entered an additional preliminary injunction allowing Plaintiffs Potter, Ali, and Umrani to take facemask fit tests.

28. Even in the event that a Plaintiff could not pass a fit test—whether because of facial hair or any other reason—alternative equipment is readily available that will provide him with adequate respiratory protection in situations where the Go-bag filter would be used.

29. The Department owns a number of powered air-purifying respirators (PAPRs) manufactured by the same company that makes both the face masks used by all

7

firefighters in connection with their SCBAs and the filters contained in the Go-bags. These PAPRs are compatible (or "interoperable") with the Department's other respiratory protection equipment.

30. A PAPR is similar to the APR formed by a face mask and Go-bag filter, except that in a PAPR a battery-operated fan pushes air through the filter. A PAPR therefore creates a positive-pressure atmosphere inside the face mask, so that any leakage will be outward. A PAPR also eliminates the need for the user to operate the filter through his or her own respiratory effort. A PAPR therefore provides both better protection, and a longer work-span, than an APR formed by a face mask and Go-bag filter.

31. In the event that a Plaintiff could not pass a fit test because of his religious observance, use of a PAPR would provide him with at least as good a level of respiratory protection as other Department members would obtain using their Go-bag filter masks, and would enable him to work for longer than he could work using his Go-bag equipment.

32. The cost to the Department of issuing PAPRs to plaintiffs would be a minuscule fraction of the Department's operating budget, which exceeds $150 million annually.

33. The Department has not considered, and cannot satisfy its burden of demonstrating, that these or other accommodations will not satisfy its interest in safety while allowing Plaintiffs to exercise their religious beliefs.

34. Special Order 20 further provides that on the first day a member reports for duty with facial hair he will be removed from field operations and ordered to shave, that on the second day a member reports for duty with facial hair he will be suspended for 12 duty hours, that on the third day a member reports for duty with facial hair he will be

suspended for 24 duty hours, and that on the fourth day a member reports for duty with facial hair his termination will be proposed.

35. Plaintiffs Potter and Umrani have been on administrative duty since failing fit tests in 2006 and 2005 respectively. While on administrative duty status, Plaintiffs suffer a major loss of pay because of the manner in which Department personnel are compensated. Plaintiffs also suffer the loss of benefits and other terms and conditions of employment.

36. In the absence of continuing and further injunctive relief by this Court, Plaintiffs could be discharged from the Department.

37. Plaintiffs have already suffered, and will continue to suffer, mental and emotional distress because of defendant's unlawful conduct.

## First Claim for Relief (RFRA)

38. Plaintiffs repeat and incorporate by reference the allegations made above.

39. The Religious Freedom Restoration Act provides, in pertinent part, that:

(a) Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

40. The District of Columbia and its Department of Fire and Emergency Medical Services are subject to the commands of the Religious Freedom Restoration Act.

41. The Department's grooming regulations substantially burden Plaintiffs' exercise of their religious beliefs by forcing them to choose between their jobs and their faith.

9

42. The Department's grooming regulations are not the least restrictive means of satisfying any compelling interest of the Defendant.

43. A less restrictive means of satisfying the Department's interest in safety is to allow plaintiffs to take fit tests (while wearing their beards) under the same procedures and standards used to test other Department members. If a Plaintiff can pass such a fit test, he is as safe as any other member of the Department.

44. Even if a Plaintiff does not pass a fit test, a less restrictive means of satisfying the Department's interest in safety is for Plaintiffs to use SCBAs or PAPRs (as appropriate to the conditions of a particular situation). Using an SCBA or a PAPR, a Plaintiff is as safe as any other member of the Department.

45. The Department cannot satisfy its burden of showing that these or other feasible accommodations will not adequately satisfy its interest in safety.

46. The Department's refusal to accommodate Plaintiffs' religious observances by using less restrictive means to satisfy the Department's interest in safety violates Plaintiffs' rights under the Religious Freedom Restoration Act.

**Second Claim for Relief (First Amendment)**

47. Plaintiffs repeat and incorporate by reference the allegations contained above.

48. The First Amendment to the United States Constitution prohibits governmental entities from interfering with the rights of its citizens to freely exercise their religious beliefs.

49. Enforcement of the grooming policy and other policies that discriminate against Plaintiffs because of their religious practices and beliefs constitutes a deprivation of Plaintiffs' First Amendment rights.

50. Plaintiffs' beliefs regarding the significance of their hair and/or beards are sincere and religious in nature, and the Defendants' policies are an unreasonable restraint on Plaintiffs' First Amendment rights to exercise their religion freely.

51. The Department's refusal to accommodate Plaintiffs' religious practices has harmed and will harm Plaintiffs by violating their First Amendment rights.

52. The Department's policies are subject to strict scrutiny review under the First Amendment because they are not neutral laws of general applicability. Heightened scrutiny is alternatively appropriate because the policies allow for a system of individualized exceptions.

**Request for Relief**

WHEREFORE, Plaintiffs ask that this Court

(A) Declare, pursuant to 28 U.S.C. § 2201, that Defendant's prohibition of facial hair violates Plaintiffs' rights under the Religious Freedom Restoration Act;

(B) Enter preliminary and permanent injunctions prohibiting the Defendant, and its officers and agents, from discharging any Plaintiff, or imposing any sanction or other adverse consequence against any Plaintiff, on account of that Plaintiff's facial hair;

(C) Order, with respect to any time period for which Plaintiffs are assigned to administrative duties on account of their facial hair, that they perform those duties on their regular schedules and be paid accordingly;

(D) Make Plaintiffs whole, with respect to pay, benefits, seniority, and all other terms and conditions of employment, for all losses resulting from their being removed from active duty because of their religious observances;

(E) Award Plaintiffs compensatory damages in an amount commensurate with the proof adduced at trial;

(F) Award Plaintiffs their reasonable costs and attorney fees; and

(G) Grant Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| /s/ Joshua A. Doan | /s/ Arthur B. Spitzer |
| William D. Iverson | Arthur B. Spitzer |
| Joshua A. Doan | American Civil Liberties Union |
| Covington & Burling LLP | of the National Capital Area |
| 1201 Pennsylvania Avenue, N.W. | 1400 20th Street, N.W., Suite 119 |
| Washington, DC 20004 | Washington, DC 200036 |
| (202) 662-5678 | (202) 457-0800 |
| *Counsel for Plaintiffs Potter, Ali, and Umrani* | *Counsel for Plaintiffs* |

August 13, 2007